Battle, J.
 

 When this cause was heard, and an account ordered at December Term, 1856, the question presented in the petition to rehear, was either not argued by the counsel, or if argued, was overlooked by the Court. It certainly was not decided, as appears from the opinion on file, and reported in 3d Jones’ Eq. 17. It is, therefore, a proper subject for consideration upon the petition to rehear the former decree. The question thus presented, is an important and interesting one,, and we aré gratified that, in the investigation of the principles upon which it is to be decided, we have been materially aided by the able arguments which have been submitted to us by the counsel on both sides. In proceeding to state the process of reasoning by which we have been led to the conclusion to which we have come, it will aid us to advert to the facts upon which the question is raised. They are briefly as follows: One Jesse L. Pool, being greatly in debt, and, as it afterwards appeared, insolvent, oh 30th day of January, 1841, executed a deed in trust to the defendant, Joseph H. Pool, conveying to him a large real and personal estate, consisting of land, slaves and other personal property, being in fact all he owned, in trust that he should, when he might deem proper, advertise and sell the same, either for cash or upon a credit, and apply the proceeds to the payment, in the first place, of certain debts recited in the deed, due and owing to the said trustee, or for which he was surety, and in the second place, to the payment of a debt due to one John Pool, and then, should there be a residue of property, after discharging these liabilities, it was to be conveyed by the trustee to the grantor, Jesse L. Pool. In the year following, J esse L„ Pool died, and
 
 *44
 
 shortly thereafter, to wit,-on the 1st and'3d days of December, 1842, the defendant, Joseph H. Pool, after-due advertisement, sold
 
 all
 
 the property conveyed to him in the deed of trust, and, by his agent, became the purchaser of a valuable tract of land, and several of the slaves. The whole amount -of sales was sufficient to pay and discharge all the debts mentioned in the first class, and a part of the’debt due to John Pool, leaving a part of that debt unpaid. This appears from ■exhibits filed with the answer of Joseph H. Pool, which eon-tain statements of the accounts of the sale, and the amounts -of the several debts secured by the deed of trust. The defendant, Joseph II. Pool, being afterwards advised that he ■could not, legally, become a purchaser at his own sale, and that the heirs-at-law and personal representative of Jesse L. Pool could, at their discretion, have his purchases declared void, and call for a reconveyance, or a resale of the property, procured a friend to take out letters of -administration on the estate of the said Jesse L. Pool, and then filed a bill in the -court of equity against the 'heirs and administrator of the deceased, calling upon them to elect either to repay him the ■amount of his bids, -and take a reconveyance of the property, or to permit him to have his purchases confirmed by a decree of the court. -On this bill such proceedings were had, that a ■decree was made, -confirming the purchases made by the trustee, and-perpetually enjoining the heirs and administrator of the grantor in trust, respectively, from setting up a title to the property. The present bill was filed by the plaintiffs, as creditors of Jesse L. Pool, not secured by the deed in trust, charging .fraud on the defendant, Joseph H. Pool, and seeking to ■hold him accountable for the full value of the land and slaves, which he purchased at his own trust sale, and which value was alleged to be much greater than that at which the property was purchased. After an answer was filed to the original bill in 1848, the defendant, Joseph II. Pool, instituted suits at law against the administrator of Jesse L. Pool for certain debts which he alleged to be due him, and which were not in-eluded in the deed in trust. In these suits, the defendant
 
 *45
 
 pleaded a want of assets,, which was admitted by the plaintiff, and judgments-
 
 guando
 
 were- taken, for the amounts claimed. After this, the defendant obtained leave to- file a supplemental answer, in, which he claimed that if he should be held to-be accountable to the plaintiffs for the increased value of the-land and slaves, purchased by him, as has been before mentioned, he should be allowed, as credits, the amount of the debts due him from Jesse L. Pool, and for which he had obtained the judgments above referred to. The right of the plaintiffs to the account was established by the decree made at the hearing of the cause, and the question, whether the defendant, Joseph Ii. Pool, is entitled to the credits which lie claims, either upon the ground of retainer, or as an equitable set-off, is the one now presented to us upon the petition to rehear.
 

 The doctrine of equitable set-off, was established as one of the principles of the court of chancery prior to the enactment of any statute authorising sets-off in a court of law.— Judge Stoey, in delivering an opinion in the case of
 
 Greene
 
 v. Darling, 5 Mason’s Rep. 201, in the circuit court of the United States, held in Bliode Island, made an elaborate review of all the English cases on the subject, from which he drew the conclusion “ that courts of equity will set off distinct debts where there has been a
 
 mutual credit;
 
 upon the principles of natural justice, to avoid circuity of suits, following the doctrine of compensation of the civil law to a limited extent. That law went further than ours, deeming the debts,
 
 buo jwre,
 
 set off or extinguished
 
 pro tanto
 
 ; -whereas, our law gives the party an election to set-off, if he chooses to exercise it; but if he does not, the debt is left in full force, to be recovered in an ordinary suit.” The learned Judge then proceeds to say “since the statute of the set-off of mutual debts and credits, courts of equity have generally followed the course adopted in the construction of the statutes by courts of law, and have applied the doctrine to equitable debts; they have rarely, if ever, broken in upon the decisions at law, unless some other equity intervened which justified them in granting relief-
 
 *46
 
 beyond the rules of law, sueh as has been already alluded to. The
 
 American
 
 courts have generally adopted the same prin-cipies as far as the statutes of set-off of the respective States have enabled them to act.” In North Carolina we have had -a statute of set-off ever since the year 1756, (see Rev. Code of 1820, ch. 57, sec. 7; Rev. Stat. ch. 31, sec. 80,) which is embodied in the Revised Code, ch. 31, sec. 77, as follows:
 
 “
 
 In -cases where there shall be mutual debts subsisting between the plaintiff and defendant; or where either party may sue or be sued as executor or administrator, and there are mutual debts, subsisting between the testator or intestate and either party, one debt may be set against the other, either by being pleaded in bar, or given in evidence on the general issue, on notice given of the particular sum intended to be set-off; and on what account the same is due, notwithstanding such debts shall be of a different nature; but if either debt arose by reason of a penalty, the sum intended to be set-off, shall be pleaded in bar, setting forth what is justly due on either side.” It is manifest from the enactment that we allow sets-off to be made at law, where the debts are mutual, without regard to the en-quiry whether they be founded on mutual credit, that is, one contracted on the faith and credit of the other, and our court of equity will be found to have acted on the same principle with regard to equitable sets-off. See
 
 Iredell
 
 v. Langston, 1 Dev. Eq. 392;
 
 Sellars
 
 v. Bryan, 2 Dev. Eq. 352;
 
 Bunting
 
 v.
 
 Ricks,
 
 2 Dev. and Bat. Eq. 130.
 

 In the case before us, it is contended by the counsel for the defendant, Joseph li. Pool, that by the application of this principle, he had a right to set-off the debts due him from the estate of Jesse L. Pool, against the claim preferred against him by the plaintiffs. The counsel insists that he would have had a right to do so as against Jesse L. Pool himself, or against his heirs and personal representative, and, consequently, against the plaintiffs who, according to the opinion heretofore 'filed in the case, have
 
 “
 
 to work out their equity ” through the representatives of the deceased debtor. The counsel for the plaintiffs argues in opposition to this alleged right of set-off,
 
 *47
 
 -contending that Joseph IT. Pool was bound as trustee, by the express words of the deed under w'hich he acted, to sell the property conveyed to him, and after satisfying the debts secured by the deed, to reeonvey the residue to the grantor in trust; that his purchase at his own sale did not divest the property, so purchased, out of his hands as trustee, and that consequently, he is still bound to convey or account for it or its value, to the plaintiffs who stand in the place of the representatives of the deceased debtor. It would be difficult to answer this argument, or to impair its strength, if the sale of all the property conveyed in the deed of trust had been unnecessary, or if the sale had been conducted in an illegal manner, so as to have infected the defendant, Joseph H. Pool’s purchases with actual fraud; but such does not appear, up^n the proofs, to have been the case. It seems from the account of the sales, and the statement of the amount of the debts secured by the deed in trust, which are filed as exhibits, that a sale of all the property was necessary, and the proofs do not satisfy us that there was any actual fraud in the manner in which it was conducted. The decree heretofore filed in the cause, does not put this defendants liability to the plaintiffs, on that ground, but upon the broad ground of policy, which forbids
 
 'a
 
 trustee to purchase at his own sale. That policy has established
 
 “
 
 the rule that, however fair the transaction, the
 
 ■cestui que trust
 
 is at liberty to set aside the sale and take back the property. If a trustee were permitted to buy in an
 
 honest case,
 
 he might buy in a case
 
 having that ajypea/rance, hut which, from the infirmity of human testimony, might he grossly
 
 otherwise.” Such is clearly the rule in the English courts of equity, and the reason upon which it is founded ; and we believe it will be found that our courts of equity have adopted the same rule, and for the same reason. See Lewin on 'Trusts, 87 Law Lib. 394 (m. p. 460.) According to this .rule, then, the purchase by a trustee, at his own sale, is not abso-iutély void, but only voidable at the election of the
 
 cestui que trust.
 
 The latter may, if he think that it is his interest to do bo, let the purchase stand and compel the trustee to pay the
 
 *48
 
 price, or he may have the sale set aside, and the property resold. The rule is manifestly well adapted to accomplish the purpose which it has in view; which is to prohibit trustees from attempting to make a profit out of the property which they are entrusted to sell, for if they, by purchasing- it, make a bad bargain, they may be held to it, but if a good one-, it may be taken from them. There cannot be a doubt, then, that if, in the present case, Jesse L. Pool, the grantor in the deed of trust, were alive, he could, in a court of equity, have tire purchases of the land and slaves, made by the trustee, set aside and the property resold, and hold the trustee responsible for the price obtained upon such resale. But could he recover from him the amount of the advanced price without being liable to have any
 
 bona fide
 
 debt which he owed the trustee set-off against his demand? We think not. The claim of each against the other, would be mutual, and in equity the real debt due from one to the other would be the excess of one of the claims over the other. When the
 
 cestui que trust
 
 came to seek the enforcement of an equity by the court, he would be met by the maxim “ tha1| he who seeks equity must do equity.” The original considerations upon which these debts are founded, are not set forth in the supplemental answer, but from the transcripts of the record of the judgments obtained thereon, it would seem that they were moneys paid by the trustee as surety for his
 
 cestui que
 
 -trust, and if so, it would be a hard rule which would enable the
 
 cestui que -trust
 
 to recover the full value of the' property purchased by the trustee at his own sale, without repaying to him money which he had been compelled to pay as the surety of his
 
 cestui que
 
 trust.— In the case of
 
 Iredell
 
 v. Langston, above referred to, HeN-deesoN, Chief Justice, said “ I doubt whether a creditor can call the funds out of the hands of the trustee without paying all the debts of the
 
 cestui que trust
 
 to the trustee.” He was not speaking, of course, of a creditor whose debt was secured by a deed in trust; and if there be a doubt whether any other creditor could call the funds out of the hands of the trus
 
 *49
 
 tee, without paying the debts of the
 
 cestui que trust
 
 to him,, surely the
 
 cestui que trust
 
 himself could not.
 

 If the proposition then be established that the defendant, Joseph II. Pool, would have had a right to set-off his debts against the demand of Jesse L. Pool himself, we think it plain, that the court of equity, acting in analogy to the express, words of the statute, as to a set-off at law, must have allowed-the defendant’s debts to have been set-off against the demand; of the
 
 cestui que trust
 
 in a suit by his representatives. It has already been shown that the plaintiffs stand in the place of.' these representatives, and, of course, have no greater equity than they would have. The defendant, cannot, however,, have the same right of set-off in his representative capacity,, as executor .or administrator of some other person. This is. settled by the case of
 
 Sellars
 
 v.
 
 Bryan,
 
 2 Dev. Eq. 358, upon the ground of a want of mutuality in the debts.
 

 It will be ordered, then, that the defendant, Joseph IP Pool, shall be allowed a credit for all
 
 bona fide
 
 debts due to-him in his own right, which he can prove against the estate-of Jesse L. Pool. In making, this proof, the judgments which, he may have obtained against the administrator of the said Jesse L. Pool, shall not be evidence for him, because the administrator was not interested in contesting the existence or legality of the alleged debts, and the plaintiffs, as creditors,., were not parties to the suits..
 

 Per Curiam, Decree accordingly..